T.C. Memo. 1996-153


UNITED STATES TAX COURT


GENERAL DYNAMICS CORPORATION AND SUBSIDIARIES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 19202-94.                    Filed March 26, 1996.


<u>David C. Bohan</u>, <u>James M. Lynch</u>, <u>Richard T. Franch</u>, and
<u>Philip A. Stoffregen</u>, for petitioner.

<u>William H. Quealy, Jr.</u>, and <u>Alice M. Harbutte</u>, for
respondent.


MEMORANDUM OPINION

GERBER, <u>Judge</u>:  Petitioner moved, in limine, to preclude
respondent from questioning further or litigating the amount of

research credits claimed under section 41[1] in connection with fixed-price Government contracts. For the reasons expressed hereinafter, petitioner's motion will be denied.

Background

This case was specially assigned to this division of the Court by an April 4, 1995, order. The parties were placed under a pretrial schedule, and trial was set to begin April 29, 1996. One of the issues involved whether petitioner was entitled to research credits in connection with fixed-price Government contracts. Although petitioner had claimed other research credits on its original returns for the years in controversy, no research credits had originally been claimed with respect to fixed-price Government contracts.

The credits claimed on petitioner's original returns were examined by respondent's engineer. During 1991, the engineer issued a report concerning the credits claimed on the original returns. Respondent mailed a notice of deficiency during 1994

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the periods under consideration. The taxable years in this case are 1985 and 1986. Sec. 41 was added in the Tax Reform Act of 1986, Pub. L. 99-514, sec. 231(d)(2), 100 Stat. 2085, 2178, as a successor to sec. 30. Sec. 30 was added by the Tax Reform Act of 1984, Pub. L.98-369, secs. 471(c), 471(i)(1), 98 Stat. 494, 826, 831, as a successor to sec. 44F. The research tax credit was established as sec. 44F in the Economic Recovery Tax Act of 1981, Pub. L. 97-34, sec. 221(a), 95 Stat. 172, 241. Rule references are to this Court's Rules of Practice and Procedure.

that, in part, made adjustments to the originally claimed credits and was based on the engineer's 1991 report.

During 1992, petitioner filed administrative claims on Forms 1120X seeking overpayments attributable to research credits in connection with fixed-price Government contracts (increased credits). Because petitioner had not originally accounted for or claimed the increased credits, an accounting firm (accountant) was engaged to identify and quantify the amount of the increased credits. It was necessary to determine from among the costs in fixed-price Government contracts those expenditures which qualified for the research credit. The accountant was not able to develop the amount of the research credits based on references to particular contract line items or based on some method that was specifically related to the contract terms.

Petitioner has explained that its costs were collected and accounted for by work orders that were grouped by reference to an aspect of various products under development or production. By analyzing work orders and interviewing petitioner's employees, the accountant developed an amount that petitioner claimed qualified for the credit. Respondent assigned the engineer who had examined the credit claimed on petitioner's original returns to examine petitioner's claim for increased credits. The engineer, after examining the accountant's materials and recommending adjustments, issued a report in 1994 prior to the issuance of the notice of deficiency, recommending that the

increased credits be disallowed.  In addition, the engineer's 1994 report reflected an amount that the engineer believed was allowable if respondent was incorrect regarding the legal theory for disallowance of the research credits attributable to fixed-price Government contracts.  The 1994 notice of deficiency made no reference to the increased credits claimed by petitioner.

At the time of the engineer's 1994 report, the Government was engaged in litigation with another taxpayer involving a substantially similar theory for disallowing research credits attributable to fixed-price Government contracts.  At the time of the issuance of the notice of deficiency and the filing of the petition in this case, respondent's legal approach had been approved by the Court of Federal Claims.  See Fairchild Indus., Inc. v. United States, 30 Fed. Cl. 839 (1994).  The decision in Fairchild was on appeal during the pendency of this Court's pretrial order.

In its petition, petitioner claimed entitlement to the increased credits, and, in her answer, respondent denied that petitioner was entitled to such credits.  In an October 1995 status report to the Court, respondent stated, concerning the issue of whether petitioner was entitled to the increased credits, that "the parties expect to enter into stipulations which establish the amounts of increase in petitioner's R&E [research] Expenses for each period.  The issue will be whether these R&E [research] Expenses were 'funded' by the contracts."

In other words, respondent reported that it was expected that the parties would be able to agree on the amount of the expenses and, hence, the substantiation of the credits, leaving the legal issue for the Court's consideration.

The focus of the legal issue was whether petitioner's research, which was performed pursuant to fixed-price Government contracts, was "funded" within the meaning of section 41(d)(4)(H). The question of whether the research was funded is dependent on whether the amounts petitioner received under the fixed-price Government contracts were "contingent on the success of the [petitioner's] research and thus considered to be paid for the product or result of the research".  Sec. 1.41-5(d)(1), Income Tax Regs.

During November 1995, the Court of Appeals for the Federal Circuit reversed the decision, Fairchild Indus., Inc. v. United States, 71 F.3d 868 (Fed. Cir. 1995).  Following this reversal of fortune for the parties in this case, respondent advised that she would concede the legal issue that had been decided by the Court of Appeals.  Respondent's counsel also advised that they were not prepared to stipulate to the amount of research credits based on the engineer's 1994 report, but that petitioner must quantify the amount of expenses underlying any credit with respect to fixed-cost Government contracts by reference to the contract line items

or other contract provisions.[2]  The accountant's methodology, which had been examined by respondent's engineer, would not satisfy the approach that respondent now contends is appropriate. Respondent does not contend that her method will result in a larger or smaller credit than the amount reflected in the engineer's report.  She only argues that it is necessary to compute the amount of the credit based on the terms of the contract.

Petitioner objected to respondent's refusal to stipulate to the amount of the increased credit contained in respondent's engineer's report, on the following grounds:  (1) Respondent should be held to the amount agreed to by the engineer, and, further, respondent should be precluded from reauditing[3] and

---

[2] Respondent contends that petitioner is required to identify research expenditures in terms of each contract line item in the fixed-price Government contracts.  Respondent bases her contention on language in the opinion of the Court of Appeals, as follows:

> The Court of Federal Claims correctly held that the availability of the credit does not depend on whether the researcher is in fact paid; it depends, as stated in Treasury Regulation § 1.41-5(d)(1), on whether, by the terms of the research agreement, payment is contingent upon development of a specified "product or result," to be paid "contingent on the success of the research."  [Fairchild Indus., Inc. v. United States, 71 F.3d 868, 872 (Fed. Cir. 1995), revg. 30 Fed. Cl. 839 (1994).]

We do not intend to decide in this opinion whether petitioner's accountant's approach or the approach that respondent contends should be followed is the correct approach. Our focus is solely on the procedural questions raised and relief sought in petitioner's motion.

[3] Petitioner has couched the language of its motion in terms
(continued...)

litigating the amount of the increased credit, and alternatively, (2) if respondent is not precluded from reauditing and/or litigating the amount of the increased credit, the Court should exercise its discretion under Rule 142 to shift the burden of proving any decrease in the amount of the credit to respondent because respondent's engineer had agreed to a number in her 1994 report.

Discussion

(1) Is respondent bound by the findings in the engineer's report?

Initially, we agree with respondent that no binding agreement regarding the amount of the increased claims exists between the parties in this case.  The reversal in Fairchild was the catalyst for the parties' current disagreement.  Respondent's engineer likely considered the Government's pending litigation in the Court of Federal Claims in the Fairchild case when writing the report concerning the amount of the research expenses and, hence, the credit.  Respondent's counsel was aware of the favorable legal precedent when they advised the Court that the

---

³(...continued)
of reauditing the amount of the credit in this Court.  The question is more correctly centered on the issue of whether respondent is bound or estopped from questioning the amount of the credit petitioner claimed in its petition.  This matter does not involve a question of whether a second examination was or should be conducted within the meaning of sec. 7605(b).

parties were attempting to stipulate to the amount of the credit and only the legal question would be presented to the Court.

After the Court of Appeals' reversal of the lower court in Fairchild, respondent decided to concede the legal issue (regarding funding). Respondent, for the first time, contended that, based on the appellate court's rationale, petitioner was required to show the amount of research expenses in connection with a particular line item in the fixed-price Government contracts. In that regard, petitioner, under respondent's approach, would be more specifically required to show that the contract language for that item supports the conclusion that payment is contingent on development of a specified product or result, so as to have been paid contingent on the success of the research.

We note that petitioner's grievance is not without substance. After all, respondent's engineer had reflected an adjusted (reduced but apparently agreeable to the engineer) amount of research credit in her report. Those circumstances had provided petitioner with comfort concerning the resolution of the quantitative aspects of the research credit controversy. Ultimately, however, we view the question here as one of timing and prejudice. This is so because no enforceable agreement had been entered into by the parties. Accordingly, we must consider whether respondent timely raised the requirement and whether

petitioner has been prejudiced in terms of its opportunity to have a fair trial on the merits of the items in controversy.

We find that respondent's action was timely in the setting of this case. The parties were preparing for a trial to begin April 29, 1996. The litigation had proceeded only a few months into the pretrial schedule and was about 6 months from trial date when the Court of Appeals' holding changed the slant of the legal playing field concerning the funding issue. This Court informally agreed with the parties that they would be given time to consider the effect of the Court of Appeals' holding. In addition, we were disposed to continue the funding issue from the scheduled April 29, 1996, starting date. Approximately 1 month after the Fairchild reversal, respondent announced her concession of the legal issue and that it would be necessary for petitioner to tie the amount of the credit to the contract language. At that point, the parties agreed to proceed to trial on the other unresolved issue(s) beginning April 29, 1996, and that any trial concerning the funding issue should be delayed. The Court agreed to continue the funding issue for a reasonable time to give the parties an opportunity to evaluate the effects of the concession and respondent's position on quantification of the research credit.

Petitioner refers us to Durkin v. Commissioner, 87 T.C. 1329, 1402-1403 (1986), affd. 872 F.2d 1271 (7th Cir. 1989), for its contention that this Court's Rules and Procedures are not to

be used by respondent to conduct an audit.  In that case, the Commissioner had issued notices of deficiency with "little, if any, prior investigation", and respondent's attorney had attempted, through discovery and subpoenas, to conduct the investigation ordinarily carried on by respondent's agents.  Id. at 1402.  Reflecting upon that situation, we stated that "The processes of this Court are simply not designed to be used to conduct a thorough investigation of a complex tax case."  Id. at 1403.

Respondent counters that Durkin v. Commissioner, supra, is not applicable here because the increased credits were not addressed in the notice of deficiency but, instead, were placed in controversy by petitioner's allegations in its initial pleading (petition).  Respondent points out that, in her answer, she denied petitioner's claim for the increased credits, and that it remains petitioner's obligation and burden to show entitlement to research credits in connection with the fixed-price Government contracts.  We agree with respondent.  Based on the foregoing, we hold that respondent is not bound by the agreement in her engineer's report.

(2) Should the burden of proof be shifted to respondent with respect to the amount of the research credit on fixed-price Government contracts?

Because we have held that respondent may question the amount of the credit, we must address petitioner's alternative request

that the Court shift the burden of proof to respondent with respect to the amount of the credit. In this regard, petitioner refers us to Rule 142(a) and suggests that we use our discretion to shift the burden to respondent. Petitioner does not provide a specific reason for our shifting the burden to respondent; petitioner only argues that it would be appropriate.

Rule 142(a) generally places the burden of proof on petitioner except as provided by statute or determined by the Court. In that regard, under Rule 142(a), the burden is shifted to respondent "in respect of any new matter, increases in deficiency, and affirmative defenses". In addition, this Court has authority to sanction a party in appropriate circumstances, including shifting of the burden of proof. See Rule 104. Shifting the burden of proof, in particular, has been described as a relatively harsh sanction. See, e.g., Estate of Spear v. Commissioner, 41 F.3d 103 (3d Cir. 1994), vacating and remanding T.C. Memo. 1993-213.

"The assertion of a new theory which merely clarifies or develops the original determination without being inconsistent or increasing the amount of the deficiency is not a new matter requiring shifting of the burden of proof." Achiro v. Commissioner, 77 T.C. 881, 890 (1981) (and cases cited therein); see also Seagate Tech., Inc., & Consol. Subs. v. Commissioner, 102 T.C. 149, 169 (1994).

Respondent argues that her contention that the amount of the credits must be substantiated as described above is a new theory and not "new matter" within the meaning of Rule 142(a). Respondent goes on to point out that her new theory "merely clarifies or develops respondent's original determination without requiring the presentation of different evidence, is not inconsistent with respondent's original determination, or does not increase the amount of the deficiency."

We do not agree with respondent's statement that the "new theory" will not require the presentation of different evidence, because, if respondent is correct about the method of determining the amount of the credit, petitioner may be required to develop and employ a different methodology from that used by its accountants to calculate the credits.

We do agree, however, that respondent's approach is a different theory rather than new matter. It represents a new theory for respondent's denial of the claim for increased credits. We note that respondent's position in this case is not derived from the notice of deficiency, but from respondent's answer in response to petitioner's allegation in its petition.

In this case, respondent did not make a determination in her notice of deficiency concerning the increased credits. Instead, petitioner made allegations in its petition seeking the benefit of such. The examination of petitioner's returns that led to the issuance of the notice of deficiency and this controversy did not

address the increased credits. The increased credits were part of a collateral matter in which petitioner had made claim for overpayments based on its claim for increased credits attributable to fixed-price Government contracts. That claim has not been formally acted on by respondent.

Petitioner's claim for overpayment, involving a series of years, including the ones at issue here, had proceeded along a parallel path and was not formally incorporated into this proceeding until petitioner made its allegations in its petition. Respondent's engineer had reviewed the claim and recommended that it be denied. The engineer, acknowledging that petitioner would be entitled to some increased credits if successful on the legal issue, merely made proposed adjustments which reduced the total amount of the credit petitioner had claimed. That total amount was reflected in the engineer's report. Petitioner agrees with and relies on the amount proposed by the engineer for purposes of this litigation. However, respondent's counsel does not agree to the amount and, instead, contends that petitioner must show a relation to the contract language to be entitled to the credit. The key fact here is that the parties did not enter into a binding agreement with respect to the amount of the increased credit. Accordingly, petitioner continues to bear the burden of proving the amount of the credit, and respondent, in the context of this litigation, has not bound herself to the adjustment that was proposed by her engineer.

That scenario leaves respondent free to argue positions or theories that she believes set the standard that petitioner must meet to satisfy its burden of proof.  As discussed above, the advancing of theories in that setting is subject to timeliness and fairness.  Accordingly, respondent is not precluded from contending that petitioner must show the relationship between the expenditure and the contract provisions is nothing more than respondent's theory. Petitioner's burden of proof on this issue will not be shifted to respondent.

Finally, respondent has not shown bad faith or any willful act for which a sanction should be considered.  The parties ideally should develop and adhere to their theories at the earliest possible time in the controversy process.  In practice, that level of foresight and consistency is not always achieved.  Indeed, petitioner's claim for the increased research credits was not part of its original return.  Instead, it surfaced near the end of the administrative process preceding this litigation.  That is a different setting from one where an issue is raised in a taxpayer's return and developed in the normal course of an audit.  The circumstances of this case fit within the reasonable limits of controversy development, and no remedial action to shift the burden is needed.  Petitioner continues to bear the burden of proving the amount of the increased credit.  In that regard, the Court is prepared to allow an adequate pretrial period within which the parties may develop their approaches and

attempt to resolve any differences they may have concerning the amount of petitioner's claim.

To reflect the foregoing,

<u>An appropriate order will be issued.</u>